WALKER, C.J., for the Court:
West Cole was charged by indictment with the capital murder of Nettie Mae Whitten. At a bifurcated trial in the Circuit Court of the Second Judicial District of Hinds County, he was convicted of capital murder and sentenced to death. From that conviction and sentence he appeals, assigning eighteen (18) errors. Finding no reversible error, we affirm the conviction and sentence.
Between 7:00 and 7:30 a.m. on December 22, 1983, Sonny Gallman and his son Joey Richardson drove in separate vehicles to the Midway Grocery in Hinds County to purchase gasoline. As Richardson pumped the gasoline, Gallman walked into the store, expecting to find the owner Nettie Mae Whitten, whom he knew well. He saw her lying on the floor between the cash register and the meat counter, bleeding from gashes on her head. Her hands were bloody and bruised; one finger was almost completely severed. Though conscious, she was incoherent. Gallman telephoned his employer and asked him to call an ambulance and the police. He then covered Nettie Mae Whitten with a blanket and wiped the blood from her face. He noticed blood splattered on the floor, walls and ceiling.
Gallman’s son was outside the store pumping gasoline. He noticed a large green car in the parking lot, and he saw a black man approximately fifty (50) years old, gray around the temples, exit from the back part of the Midway Grocery building, which was Nettie Mae Whitten’s residence. Richardson, who was seventeen, walked to the store entrance, where his father stopped him and told him to go home.
*367 Investigator William Turcotte of the Hinds County Sheriffs Department was the first officer on the scene. He found an eighteen-inch lead pipe outside the entrance to the residence part of the building.
Nettie Mae Whitten was hospitalized; five (5) days later she died. An autopsy revealed that the cause of death was multiple blunt trauma to the cranium.
Investigation revealed that several witnesses had seen an automobile resembling West Cole’s at the Midway Grocery that morning. The police questioned West Cole, who gave the following account in a written confession. Cole went to' the Midway Grocery on the morning of December 22, 1983, and purchased 750 worth of luncheon meat. He returned to his car. While he was sitting in his car eating, a “white lady and a little girl” went into the store. After they left he went back into the store and reached for some money lying on top of the cash register. Nettie Mae Whitten grabbed Cole’s hand and then picked up a knife in an effort to stop him. He shook the knife from her hand, picked up a length of pipe from the floor and struck the woman on the front of the head. She fell forward. He then struck her on the back of the head and left, dropping the pipe on the ground as he walked out the door.
West Cole was tried July 23-27, 1984, in the Circuit Court of the Second Judicial District of Hinds County. At the conclusion of the guilt phase, the jury returned a verdict of guilty of capital murder. The trial court then conducted the sentencing phase, after which the jury found that Cole should suffer the death penalty. Cole appeals, assigning eighteen (18) errors.
I. DID THE TRIAL COURT’S FAILURE TO GRANT A MISTRIAL OR A CONTINUANCE UPON THE PROSECUTION’S CALLING OF A SURPRISE WITNESS VIOLATE RULE 4.06 OF MISSISSIPPI CRIMINAL RULES OF CIRCUIT COURT PRACTICE AND DENY COLE DUE PROCESS OF LAW?
In his confession Cole mentioned “a white lady and a little girl” whom he had seen at the Midway Grocery the morning of the robbery and beating. Law enforcement officials immediately began a search for this potential witness, an effort which proved initially fruitless. During jury voir dire the prosecuting attorneys, unaware that police officers had located the witness, told defense counsel she would not be called.
When the prosecuting attorneys learned that the witness was available, they immediately notified defense counsel of 1) their intent to call her as a witness, and 2) the substance of her testimony. The following day, when the State called the witness, whose name was Tracy Pope, defense counsel objected, claiming surprise. The trial court then gave defense counsel the opportunity to interview the witness. After the interview, defense counsel renewed the objection but did not request a continuance. Overruling the objection, the trial court allowed the State to call Tracy Pope, who identified Cole as the man she had seen at Midway Grocery on December 22, 1983.
Cole argues on appeal that because Tracy Pope’s name was not provided in response to a discovery request, the trial court erred in allowing her to testify. At the outset we note that the prosecuting attorneys diligently informed defense counsel of each development in the search for Tracy Pope. It is, nevertheless, apparent from the record that the police had located the witness two (2) days before trial began. Because the officer’s knowledge is attributable to “the State,” Fuselier v. State, 468 So.2d 45 (Miss.1985), the failure to inform defense counsel that Pope would testify constituted, technically, a discovery violation.
When faced with a discovery violation, technical or otherwise, the trial court should follow this procedure:
1) Upon defense objection, the trial court should give the defendant a reasonable opportunity to become familiar with the undisclosed evidence by interviewing the witness, inspecting the physical evidence, etc.
*368 2) If, after this opportunity for familiarization, the defendant believes he may be prejudiced by lack of opportunity to prepare to meet the evidence, he must request a continuance. Failure to do so constitutes a waiver of the issue.
3) If the defendant does request a continuance the State may choose to proceed with trial and forego using the undisclosed evidence. If the State is not willing to proceed without the evidence, the trial court must grant the requested continuance.
Box v. State, 437 So.2d 19 (Miss.1983) (Robertson, J., specially concurring). See also Griffin v. State, 504 So.2d 186 (Miss.1987); Watts v. State, 492 So.2d 1281,1290 (Miss.1986); Hall v. State, 490 So.2d 858, 859 (Miss.1986); Gray and Nations v. State, 487 So.2d 1304, 1313-14 (Miss.1986); Cabello v. State, 471 So.2d 332, 343 (Miss.1985), cert.denied, 476 U.S. 1164,106 S.Ct. 2291, 90 L.Ed.2d 732 (1986).
The trial court in the case at bar followed this procedure and afforded defense counsel an opportunity to interview the witness. After the interview, however, defense counsel made no request for a continuance. We will not put the trial court in error for failing to grant relief which was never requested. By failing to request a continuance, Cole waived any violation of Rule 4.06.
II. DID THE TRIAL COURT ERR IN PRECLUDING THE DEFENSE FROM ARGUING TO THE JURY THE VOLUNTARINESS OF COLE’S CONFESSION?
Cole moved to suppress his confession, alleging that it was not voluntarily given. After conducting a suppression hearing, the trial court admitted the confession into evidence. Cole argues on appeal that the trial court, after admitting the confession, improperly prohibited him from putting on evidence and argument as to its voluntariness. This argument is without merit.
Where the trial court has admitted a confession into evidence, it is still within the province of the jury to determine whether the statement is true and voluntary, and what weight and credibility should be accorded to it. Wilson v. State, 451 So.2d 724 (Miss.1984); Rhone v. State, 254 So.2d 750 (Miss.1971). Thus, once a confession has been admitted, “either party has a right to introduce before the jury the same evidence which was submitted [at the suppression hearing] as well as any other evidence relative to the weight and credibility of the confession.” Rhone, 254 So.2d at 754.
The record in the case at bar simply does not support Cole’s claim that he was prevented from arguing voluntariness to the jury. We note the following areas explored by defense counsel in the presence of the jury: 1) whether Cole was tired when he confessed, 2) whether, at the time he confessed, Cole had been at the sheriff’s office all day, 3) whether Cole was separated from his family during questioning, and 4)whether Cole had only a third grade education.
During cross-examination of one of the officers present when Cole confessed, defense counsel questioned the officer extensively about the circumstances of the interrogation, prompting the following exchange:
BY THE DISTRICT ATTORNEY:
Your Honor, this statement has been introduced; it has been ruled admissible; and we object to any further questioning in this regard.
BY THE COURT:
Let’s move along, Mr. Tucker.
We note that the trial court did not sustain the objection, but instead told defense counsel to “move along,” an instruction which we deem eminently appropriate, since defense counsel had consumed nine (9) pages of the record questioning the officer about the exact time the confession was given. Moreover, the record reveals that after the objection defense counsel continued to cross-examine the officer about voluntariness, asking 1) whether Cole was threatened during questioning, and 2) whether Cole asked for his high *369 blood pressure medicine during questioning.
Cole also argues on appeal that the trial court prevented him from challenging the confession during closing argument. The record reveals, however, that the trial court simply told defense counsel not to argue outside the record.
Having reviewed the record thoroughly, we are of the opinion that Cole was not prevented from challenging the voluntariness of the confession and this assignment of error is without merit.
HI. DID PROSECUTORIAL MISCONDUCT RESULT IN A VIOLATION OF COLE’S CONSTITUTIONAL RIGHTS?
Cole argues that his constitutional rights were violated in that the prosecution 1) used hypothetical questions during voir dire to force jurors to commit themselves to voting for the death penalty, and then compounded the error by referring to those commitments during closing argument, 2) mentioned the possibility of parole, and 3) asked the jury, during final argument, to disregard Cole’s age at the time of the crime (58), which is enumerated in the statute as a mitigating circumstance. Miss. Code Ann. § 99-19-101(6) (Supp.1986) (effective 1983).
Of the numerous instances of alleged prosecutorial misconduct, Cole objected to only three (3). Counsel may not sit idly by making no protest as objectionable evidence is admitted, and then raise the issue for the first time on appeal. If no contemporaneous objection is made, the error, if any, is waived. This rule’s applicability is not diminished in a capital case. Irving v. State, 498 So.2d 305 (Miss.1986), cert. denied, — U.S.—, 107 S.Ct. 1986, 95 L.Ed.2d 826 (1987); Johnson v. State, 477 So.2d 196 (Miss.1985), cert. denied, 476 U.S. 1109, 106 S.Ct. 1958, 90 L.Ed.2d 366 (1986); In re Hill, 460 So.2d 792 (Miss.1984); Hill v. State, 432 So.2d 427 (Miss.), cert. denied, 464 U.S. 977,104 S.Ct. 414, 78 L.Ed.2d 352 (1983).
Defense counsel did object to three (3) instances of alleged prosecutorial misconduct, but on each of the three (3) points, he failed to obtain a ruling from the trial court. When the district attorney told jurors, during voir dire, that they should not be influenced by sympathy, defense counsel objected, but no ruling on the objection appears in the record. Similarly, when defense counsel, during voir dire, told potential jurors they could consider mercy in deciding the case, the district attorney objected. Instead of ruling on the objection, the trial court once again gave the rather cryptic instruction, “Move on.” Finally, when the district attorney reminded jurors during closing argument that they had promised him they would not “look for an excuse,” defense counsel objected, but did not obtain a ruling from the trial court. Because the record includes no ruling by the trial court on any of these objections, they are waived. Hemmingway v. State, 483 So.2d 1335 (Miss.1986); Cummings v. State, 465 So.2d 993 (Miss.1985).
IV. WERE EXTRANEOUS FACTORS INTRODUCED AT THE SENTENCING PHASE IN VIOLATION OF COLE’S CONSTITUTIONAL RIGHTS?
This assignment of error involves three (3) instances in which, according to Cole, the prosecution elicited inadmissible, prejudicial testimony during the sentencing phase.
First, Cole complains of the prosecution’s attempt to introduce his notice of alibi during cross-examination of Purvis Davis in the sentencing phase of the trial. Davis, who was Cole’s father-in-law and landlord, testified that Cole 1) helped him with household tasks, 2) went to church every Sunday, 3) was a Mason, 4) helped care for his severely disabled nephew, and 5) loved his family and treated them well. After defense counsel questioned Davis, the district attorney inexplicably began his cross-examination with this question: “Mr, Davis, would you be the same Purvis Davis that this defendant filed a paper with the Court that said he was with you all night on the night before the murder?” Over *370 Cole’s objection, the district attorney elicited from Davis that Cole had not been with him on the night before the murder—testimony which was in conflict with Cole’s notice of alibi. The district attorney’s intent was then clarified by his next question, “So, you’re not telling us how truthful he is, are you?”
This evidence was not admissible to rebut Davis’ character testimony. The defense had made no effort to prove Cole’s truthfulness as a mitigating circumstance. Had the evidence been used to rebut a specific mitigating factor, then we would reach the issue which confronted us in Ray v. State, 503 So.2d 222 (Miss.1987). The evidence in this case, however, was offered to prove a character trait which Cole had not put in issue. As the district attorney himself stated, “[Davis was] not telling [the jury] how truthful [Cole] was.” Indeed, no one claimed that Cole was truthful, and for that very reason, any attempt to prove the contrary was improper.
The error does not, however, require reversal. The instructions did not allow the jury to consider untruthfulness as an aggravating circumstance, nor do we believe the jury sentenced Cole to death for lying, a transgression which fades into insignificance when compared with the aggravating circumstances which the jury did find:
1) the capital murder was committed by a person under sentence of imprisonment,
2) the defendant was previously convicted of another capital offense or a felony involving the use or threat of violence to the person,
3) the capital murder was committed intentionally while the defendant was engaged in the commission of robbery, and was committed for pecuniary gain, and
4) the capital murder was especially heinous, atrocious or cruel.
Cole also argues that the trial court erred in allowing the State, during the sentencing phase, to put on evidence 1) that he had declared bankruptcy, and 2) that he was separated from his wife. We conclude, however, that these two (2) items of evidence were offered, respectively, to rebut 1) Davis’ testimony that Cole had a steady job, and 2) Davis’ testimony that Cole loved his family. Such rebuttal evidence, offered to negate testimony about specific mitigating factors, is admissible. Stringer v. State, 500 So.2d 928, 941 (Miss.1986); Leatherwood v. State, 435 So.2d 645, 653 (Miss.1983), cert. denied, 465 U.S. 1084, 104 S.Ct. 1455, 79 L.Ed.2d 772 (1984).
V. DID THE TRIAL COURT ERR IN ALLOWING THE JURY, DURING THE SENTENCING PHASE, TO CONSIDER DOCUMENTARY EVIDENCE WHICH THE STATE HAD NOT DISCLOSED?
During the sentencing phase, the State introduced two (2) judgments of conviction as evidence of an aggravating circumstance. Cole objected on the basis that the documents had not been provided to him in discovery. Again, however, Cole failed to request a continuance, thereby waiving any discovery violation. Attempting to excuse this omission, Cole argues on appeal that such a request would have been futile, since the trial court had stated that no more continuances would be granted to either side.
Counsel must make a record, regardless of the trial court’s apparent unwillingness to rule in counsel’s favor. We will not reverse the trial court for failing to grant a continuance which was never requested. Griffin, 504 So.2d 186 (Miss.1987); Cabello, 471 So.2d 332 (Miss.1985). Moreover, we note that the trial court’s reluctance to grant a continuance did not deter defense counsel from requesting one later in the sentencing phase, when defense witnesses were unavailable.
VI. DID THE TRIAL COURT ERR IN INSTRUCTING THE JURY THAT THEY SHOULD NOT CONSIDER CONVICTING COLE OF SIMPLE MURDER UNLESS THEY FOUND HIM NOT GUILTY OF CAPITAL MURDER?
Not only did defense counsel fail to object to this instruction, he stated affirma- *371 tívely, “Your Honor, we don’t have any objection to that. I think we have got one similar to that.” Cole waived this issue by failing to object at trial. Shelton v. State, 445 So.2d 844 (Miss.1984); Pickett v. State, 443 So.2d 796 (Miss.1983); Sup.Ct. Rule 42.
VII. DID THE TRIAL COURT ERR IN LIMITING COLE’S ARGUMENT AT THE SENTENCING PHASE OF THE TRIAL?
Although Cole did not testify in his own behalf, he did address the jury by making part of the defense’s closing argument at the sentencing phase. The trial court instructed Cole not to claim innocence, since that issue had already been determined by the jury.
Cole argues on appeal that this ruling prevented him from offering as a mitigating factor whimsical or residual doubt, which might have lingered in the minds of jurors even after they had found him guilty beyond a reasonable doubt.
The sentencer in a capital case may not he precluded from considering, in mitigation, any aspect of the defendant’s character or record or any circumstance of the offense. Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986); Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed. 2d 873 (1978); Jackson v. State, 337 So.2d 1242 (Miss.1976). This rule does not limit the trial court’s power to exclude from the sentencing phase, as irrelevant, evidence not bearing on the defendant’s character or prior record, or the circumstances of the offense. Lockett, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 873.
The United States Supreme Court, in addressing the arguments in favor of unitary juries in capital cases, stated that the defendant in a capital case might benefit at the sentencing phase of the trial from the jury’s “residual doubts” about his guilt. The Court noted without comment that some states, though using unitary juries in capital trials, do not allow the defendant to argue residual or whimsical doubt at the sentencing phase. Lockhart v. McCree, 476 U.S. 162,106 S.Ct. 1758, 90 L.Ed.2d 137 (1986).
We need not determine whether residual or whimsical doubt is a relevant mitigating factor which the defendant in a capital case may argue to the jury at the sentencing phase of the trial. In the case at bar, defense counsel delivered his closing argument at the sentencing phase without objection or interruption. He made no effort to argue residual doubt, although he did make this statement:
Finally, the Court has told you as far as mitigating circumstances that you may consider any other matter, any other aspect of the defendant’s character [or] record and any other circumstance of the offense brought you during the trial of this case which you the jury deem to be mitigating on behalf of the defendant. That gives you the right to consider any phase of this trial, any evidence, anything considered as a mitigating rear son for not giving him death.
It was after defense counsel had completed his argument, but before Cole began his statement, that the trial court instructed Cole not to argue guilt or innocence. Cole then spoke six (6) sentences, asking in essence that the jury have mercy on him and spare his life.
The record contains no indication that, but for the trial court’s admonition, Cole would have argued residual doubt. Although defense counsel made his closing argument before the trial court “limited” Cole, defense counsel made no reference to residual doubt, nor did he challenge the trial court’s instruction to Cole. This assignment of error is without merit.
VIII. DID THE TRIAL COURT ERR IN REFUSING, DURING THE SENTENCING PHASE, TO GRANT A CONTINUANCE IN ORDER FOR COLE TO SECURE TWO (2) UNAVAILABLE WITNESSES?
After the trial had begun, Cole moved for a continuance, claiming that two (2) of the witnesses he intended to call at the *372 sentencing phase were unavailable. He assigns as error the trial court’s denial of that motion.
Motions for continuance in criminal trials are governed by Miss.Code Ann. § 99-15-29 (1972), which provides, in part, as follows:
On all applications for a continuance the party shall set forth in his affidavit the facts which he expects to prove by his absent witness or documents that the court may judge of the materiality of such facts, the name and residence of the absent witness, that he has used due diligence to procure the absent documents, or presence of the absent witness, as the case may be, stating in what such diligence consists, and that the continuance is not sought for delay only, but that justice may be done.
It is in light of these requirements that we consider the showing which Cole made in support of his motion for continuance to secure the attendance of these two (2) witnesses.
Nathaniel Booker was a minister who was to testify regarding Cole’s religious beliefs. Instead of submitting the affidavit required by statute, Cole’s counsel simply stated, in his motion ore tenus, that Booker was to testify about Cole’s religious beliefs, but that he was conducting a funeral service and could not be present to testify. Not only did defense counsel fail to make any showing of due diligence to procure Booker’s presence, on the contrary, defense counsel affirmatively stated that he had not sought a subpoena instanter for Booker, since he knew Booker was conducting a funeral.
Lurien Bennett was Cole’s former landlady. She submitted to the court a letter in which she stated that Cole was a helpful, hardworking, compassionate man. Defense counsel, however, did not make any showing of due diligence to procure this witness’s presence. The record contains a letter from Lurien Bennett’s physician stating that she had a pacemaker and was taking medications which required careful attention to her dosage schedule. That letter, however, in no way indicated that the witness was unable to testify; it simply stated that she was taking medication and required attention. Nor did defense counsel make any other showing to the effect that Bennett was unable to testify. Even if we were to assume that Bennett’s medical condition prevented her from testifying, there was no indication that her condition would improve to the extent that she later would be able to testify.
Because Cole’s showing fell far short of that required by the statute, we hold that the trial court did not abuse its discretion in denying Cole’s motion for a continuance. See Johnson v. State, 477 So.2d 196 (Miss.1985).
IX. DID THE TRIAL COURT ERR IN ADMITTING INTO EVIDENCE COPIES OF COUNTY COURT RECORDS CONTAINING 1) JUDGMENTS OF CONVICTION FOR GRAND LARCENY AND SIMPLE ROBBERY, AND 2) THE TRANSCRIPT OF THE SENTENCING HEARING ON THE CHARGE OF GRAND LARCENY?
During the sentencing phase of the trial, the State put the following documents into evidence: 1) judgment of conviction for manslaughter, 2) judgment of conviction for simple robbery, 3) judgment of conviction for attempted rape, 4) transcript on sentencing for grand larceny, and 5) judgment of conviction for unspecified offense.
On appeal Cole argues that the convictions of grand larceny and simple robbery were inadmissible because they were irrelevant to the statutory aggravating circumstances, i.e., that the capital murder was committed by a person under sentence of imprisonment, and that the defendant was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person. Miss.Code Ann. § 99-19-101(5) (Supp.1986) (effective March 29, 1983). Cole also argues on appeal that the transcript of the sentencing proceeding prejudiced him in that it contained a plea for mercy by the attorney then representing Cole. In his brief Cole *373 claims that this evidence “fed the prosecutor’s argument that here again the appellant was asking for mercy and another chance as he has done many times before
Defense counsel made neither of these arguments at trial. His only objections to the documents were 1) that they had not been provided to him in discovery, and 2) that no sufficient foundation was laid for their admission. Having failed to make the present objections at trial, Cole may not raise them for the first time on appeal. Irving v. State, 498 So.2d 305; Johnson v. State, 477 So.2d 196; In re Hill, 460 So.2d 792; Hill v. State, 432 So.2d 427.
X. DID THE TRIAL COURT ERR IN REFUSING TO SUPPRESS TRACY POPE’S IN-COURT IDENTIFICATION OF COLE?
At trial Cole moved to suppress an in-court identification by Tracy Pope, who had seen him at Midway Grocery the morning of the crime. He claimed that the in-court identification was the product of an imper-missibly suggestive photographic show-up, in which Pope selected Cole’s photograph after seeing him on television.
At the suppression hearing, Tracy Pope testified that although she had seen a television broadcast showing Cole, she had seen only Cole’s back as he entered a car. She further testified that seeing the film on television did not help her to identify him, and that the police had not suggested to her which photograph she should pick. Because the record contains no indication that the photographic show-up was impermissi-bly suggestive, we do not reach the issue whether the in-court identification was a product of the out-of-court photographic show-up. Arteigapiloto v. State, 496 So.2d 681 (Miss.1986); Hanner v. State, 465 So. 2d 306 (Miss.1985). The trial court did not err in denying Cole’s motion to suppress.
XI. DID THE TRIAL COURT ERR IN EXCLUDING CERTAIN MITIGATING EVIDENCE AT THE SENTENCING PHASE OF THE TRIAL?
Twice during the sentencing phase, the trial court excluded, as hearsay, the contents of certain conversations. In the first instance Purvis Davis attempted to testify about Cole’s statements regarding religion; the trial court instructed him not to reveal the content of any conversation. In the second instance Cole’s sister attempted to relate Cole’s statements about the death of her child, Cole’s disabled nephew. Again the trial court instructed the witness not to relate the content of any conversation.
Although Cole’s failure to make an offer of proof precludes a positive determination, it is unlikely that these statements would have constituted hearsay. A statement offered to prove something other than the truth of the matter asserted is not hearsay. Slay v. Illinois Central Gulf Railroad Co., 511 So.2d 875 (Miss.1987); Bridgeforth v. State, 498 So.2d 796 (Miss.1986); Page v. State, 495 So.2d 436 (Miss.1986). Moreover, under certain rare circumstances, the due process clause may require that the hearsay rule not be applied mechanistically to defeat the ends of justice. Green v. Georgia, 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979); Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).
In the case at bar, however, Cole’s claim fails for two (2) reasons. First, he made no offer of proof at trial. No error may be predicated on the exclusion of evidence unless an offer of proof is made. Gates v. State, 484 So.2d 1002 (Miss.1986); King v. State, 374 So.2d 808 (Miss.1979), cert. denied, 445 U.S. 917, 100 S.Ct. 1279, 63 L.Ed.2d 602 (1980). As noted above, Cole’s failure to make an offer of proof prevents this Court from determining with certainty whether the excluded testimony constituted hearsay. Second, Cole has not made any showing of prejudice. Though precluded from relating conversations, the witnesses testified that Cole went to church, that he enjoyed church services, that he loved everyone, and that he was upset when his nephew died. Assuming arguendo that the testimony should have been admitted, we find beyond a reasonable doubt that any error resulting from its exclusion was harmless. Gray v. State, 472 So.2d 409 (Miss.1985), reversed on oth *374 er grounds, — U.S.-, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987).
XII. DID THE TRIAL COURT ERR IN ALLOWING THE JURY TO CONSIDER AS AN AGGRAVATING CIRCUMSTANCE THAT THE CAPITAL MURDER WAS COMMITTED DURING A ROBBERY?
Cole argues on appeal that because robbery was the underlying felony on which the capital murder charge was based, and because the jury had convicted him of that charge in the guilt phase, he was required to disprove this aggravating circumstance at the sentencing phase. We have repeatedly rejected this argument. Irving v. State, 498 So.2d 305; Smith v. State, 419 So.2d 563 (Miss.1982). This assignment of error is without merit.
XIII. DID THE TRIAL COURT ERR IN ALLOWING THE JURY TO CONSIDER AS AN AGGRAVATING CIRCUMSTANCE THAT THE CAPITAL MURDER WAS ESPECIALLY HEINOUS, ATROCIOUS AND CRUEL?
Cole argues 1) that this language is overly broad, 2) that the trial court should have instructed the jury as to what the phrase meant and how it had been applied in previous cases, and 3) that the evidence was insufficient to make out a jury issue on this aggravating circumstance. Cole did not object on these grounds at trial. He has thus waived the issues and may not raise them on appeal.
XIV. DID THE SENTENCING INSTRUCTION, ALONG WITH THE STATUTE ON WHICH IT WAS BASED, SHIFT THE BURDEN OF PROOF TO COLE IN THAT NEITHER THE INSTRUCTION NOR THE STATUTE CONTAINED STANDARDS FOR THE JURY TO USE IN WEIGHING THE AGGRAVATING AND MITIGATING CIRCUMSTANCES?
Cole waived this issue by failing to object at trial.
XV. DID THE “DEATH QUALIFICATION” OF THE JURY DENY COLE AN IMPARTIAL JURY FROM A CROSS-SECTION OF THE COMMUNITY?
Cole argues that the exclusion of jurors who would not consider the death penalty under any circumstances created a conviction-prone jury in the guilt phase. This argument has been rejected by both the United States Supreme Court and this Court. Lockhart v. McCree, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986); Irving v. State, 498 So.2d 305 (Miss.1986), cert. denied, — U.S.-, 107 S.Ct. 1086, 95 L.Ed.2d 826 (1987). This assignment of error is without merit.
XVI. DID THE TRIAL COURT ERR IN FAILING TO INSTRUCT THE JURY THAT THEY COULD SENTENCE COLE TO LIFE REGARDLESS OF THE ABSENCE OF MITIGATING FACTORS OR THE WEIGHT OF THE AGGRAVATING OR MITIGATING CIRCUMSTANCES?
We have repeatedly rejected this argument. Wiley v. State, 484 So.2d 339 (Miss.), cert. denied, — U.S. -, 107 S.Ct. 304, 93 L.Ed.2d 278 (1986); Irving v. State, 44Í So.2d 846 (Miss.), cert. denied, 470 U.S. 1059, 105 S.Ct. 1774, 84 L.Ed.2d 834 (1985). The assignment of error is without merit.
XVII. DID THE TRIAL COURT ERR IN FAILING TO DEFINE AND DESCRIBE THE NATURE AND FUNCTION OF MITIGATING CIRCUMSTANCES?
The following is Instruction D-5, the trial court’s refusal of which Cole assigns as error:
If you find the existence of any one of the aggravating circumstances, then you must weigh and consider any mitigating circumstances.
*375 A mitigating circumstance is any fact relating to West Cole’s character, education, environment, mentality or life or any aspect of the crime itself which may be considered extenuating or reducing the moral culpability of the killing or making the defendant less deserving of the extreme punishment of death. If (sic) offering mitigating evidence, the defendant is not suggesting that the crime is justified or excusable. Mitigating circumstances are those circumstances which offer a partial explanation as to why and how the crime occurred and which tend to justify the penalty of life imprisonment.
While the weight which you give to a particular mitigating circumstance is a matter for your moral, factual, and legal judgment, you must consider all evidence of mitigation. You may not refuse to consider any evidence of mitigation and thereby give it no weight.
We rejected this argument in Booker v. State, 449 So.2d 209, 218-19 (Miss.1984), vacated on other grounds, 472 U.S. 1023, 105 S.Ct. 3493, 87 L.Ed.2d 626 (1985). We are of the opinion that the sentencing instruction in the case at bar, which tracked the language of the statute, appropriately channelled the sentencer’s discretion. King v. State, 421 So.2d 1009 (Miss.1982), cert. denied, 461 U.S. 919, 103 S.Ct. 1903, 77 L.Ed.2d 290 (1983).
XVIII. WAS COLE’S DEATH SENTENCE THE RESULT OF A PATTERN OF DISCRIMINATION, BASED ON RACE, SEX, AGE AND PROVERTY, WHICH DISCRIMINATION HAS BEEN PRACTICED BY MISSISSIPPI PROSECUTORS, COURTS, JURIES AND GOVERNORS?
Cole did not raise this issue in the trial court, nor do we find in the record any factual basis for this claim. Therefore, it is waived.
Moreover, the United States Supreme Court has held that a defendant advancing such a claim must prove that the decision-maker in his case acted with a discriminatory purpose. McCleskey v. Kemp, — U.S. —, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). This assignment of error is without merit.
Having carefully reviewed the record, we conclude that Cole’s death sentence was not imposed under the influence of passion, prejudice or any other arbitrary factor; that the evidence supports the jury’s finding of four (4) statutory aggravating circumstances; and that the sentence is not excessive or disproportionate to the penalty imposed in similar cases.[1]
Finding no reversible error, we affirm both the conviction of capital murder and the sentence of death. The fixing of the date of execution is held in abeyance until the defendant, West Cole, has exhausted his remedies at law.
AFFIRMED.
ROY NOBLE LEE, P.J., and ROBERTSON, ANDERSON and GRIFFIN, JJ., concur.
HAWKINS, P.J., and SULLIVAN, J., dissent.
DAN M. LEE, J., concurs in result only.
ROBERTSON, PRATHER, and ANDERSON, JJ., concur by separate written opinion in which DAN M. LEE, J., joins parts I, II, III, and VI only.
APPENDIX “A”
DEATH CASES AFFIRMED BY THIS COURT:
Wiley v. State, 484 So.2d 339 (Miss.1986).
Johnson v. State, 477 So.2d 196 (Miss.1985).
Gray v. State, 472 So.2d 409 (Miss.1985).
Cabello v. State, 471 So.2d 332 (Miss.1985).
Jordan v. State, 464 So.2d 475 (Miss.1985).
Wilcher v. State, 455 So.2d 727 (Miss.1984).
Billiot v. State, 454 So.2d 445 (Miss.1984).
*376 Stringer v. State, 454 So.2d 468 (Miss.1984).
Dufour v. State, 453 So.2d 337 (Miss.1984).
Neal v. State, 451 So.2d 743 (Miss.1984).
Booker v. State, 449 So.2d 209 (Miss.1984).
Wilcher v. State, 448 So.2d 927 (Miss.1984).
Caldwell v. State, 443 So.2d 806 (Miss.1983).
Irving v. State, 441 So.2d 846 (Miss.1983).
Tokman v. State, 435 So.2d 664 (Miss.1983).
Leatherwood v. State, 435 So.2d 645 (Miss.1983).
Hill v. State, 432 So.2d 427 (Miss.1983).
Pruett v. State, 431 So.2d 1101 (Miss.1983).
Gilliard v. State, 428 So.2d 576 (Miss.1983).
Evans v. State, 422 So.2d 737 (Miss.1982).
King v. State, 421 So.2d 1009 (Miss.1982).
Wheat v. State, 420 So.2d 229 (Miss.1982).
Smith v. State, 419 So.2d 563 (Miss.1982).
Johnson v. State, 416 So.2d 383 (Miss.1982).
Edwards v. State, 413 So.2d 1007 (Miss.1982).
Bullock v. State, 391 So.2d 601 (Miss.1980).
Reddix v. State, 381 So.2d 999 (Miss.1980).
Jones v. State, 381 So.2d 983 (Miss.1980).
Culberson v. State, 379 So.2d 499 (Miss.1979).
Gray v. State, 375 So.2d 994 (Miss.1979).
Jordan v. State, 365 So.2d 1198 (Miss.1978).
Voyles v. State, 362 So.2d 1236 (Miss.1978).
Irving v. State, 361 So.2d 1360 (Miss.1978).
Washington v. State, 361 So.2d 61 (Miss.1978).
Bell v. State, 360 So.2d 1206 (Miss.1978).
DEATH CASES REVERSED AS TO GUILT PHASE AND SENTENCE PHASE:
Foster v. State, 508 So.2d 1111 (Miss.1987).
Smith v. State, 499 So.2d 750 (Miss.1986).
West v. State, 485 So.2d 681 (Miss.1985).
Fisher v. State, 481 So.2d 203 (Miss.1985).
Johnson v. State, 476 So.2d 1195 (Miss.1985).
Fuselier v. State, 468 So.2d 45 (Miss.1985).
West v. State, 463 So.2d 1048 (Miss.1985).
Jones v. State, 461 So.2d 686 (Miss.1984).
Moffett v. State, 456 So.2d 714 (Miss.1984).
Lanier v. State, 450 So.2d 69 (Miss.1984).
Laney v. State, 421 So.2d 1216 (Miss.1982).
DEATH CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR RESENTENCING TO LIFE IMPRISONMENT:
Edwards v. State, 441 So.2d 84 (Miss.1983).
Dycus v. State, 440 So.2d 246 (Miss.1983).
Coleman v. State, 378 So.2d 640 (Miss.1979).
DEATH CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR A NEW TRIAL ON SENTENCING PHASE ONLY:
Stringer v. State, 500 So.2d 928 (Miss.1986).
Pinkton v. State, 481 So.2d 306 (Miss.1985).
Mhoon v. State, 464 So.2d 77 (Miss.1985).
Cannaday v. State, 455 So.2d 713 (Miss.1984).
Wiley v. State, 449 So.2d 756 (Miss.1984).
Williams v. State, 445 So.2d 798 (Miss.1984).

. See Appendix "A".